UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EMREE SMITH; and CHRISTIAN SMITH,

                Plaintiffs,

v.                                                                                   5:24-CV-1523
                                                                                          (GTS/CBF)
CITY OF SYRACUSE; SYRACUSE POLICE
DEPARTMENT; JOSEPH L. CECILE as THE CHIEF
OF POLICE OF THE SYRACUSE POLICE
DEPARTMENT;[1] RYAN LINNERTZ; ERIC GERACE;
and RICHARD BOUGOURD,

                Defendants.

_____

APPEARANCES:                                               OF COUNSEL:

GILLETTE & IZZO LAW OFFICE PLLC                JOSHUA M. GILLETTE, ESQ.
  Counsel for Plaintiffs
205 South Salina Street, Suite 403
Syracuse, NY 13202

CITY OF SYRACUSE LAW DEPARTMENT           DARIENN BALIN, ESQ.
  Counsel for Defendants                                TODD M. LONG, ESQ.
233 East Washington Street
Room 300 City Hall
Syracuse, NY 13202

_____

[1]     Because Plaintiffs have sued Defendant Joseph Cecile specifically in his capacity "as the Chief of Police of the Syracuse Police Department" and have failed to allege any actions taken by Defendant Cecile outside of that capacity, the Court has construed the claims against Defendant Cecile as being in his official capacity only. Indeed, Plaintiffs admit in their opposition memorandum of law that they have sued him only in his official capacity. (Dkt. No. 24, at 15-16.) The Court notes that Mark Rusin was sworn in as the Chief of Police for the Syracuse Police Department in January 2026, and Joseph Cecile is no longer serving in that position. As a result, Mark Rusin is automatically substituted in this action pursuant to Fed. R. Civ. P. 25(d) for all claims against the Chief of Police. However, because discussion of certain aspects of Plaintiffs' claims would become unnecessarily convoluted if the Court were to substitute Mark Rusin for all mentions of Joseph Cecile, the Court has continued to refer to the relevant Defendant as "Defendant Cecile" throughout this Decision and Order for the sake of clarity.

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Emree Smith and Christian Smith ("Plaintiffs") against the City of Syracuse, the Syracuse Police Department, Police Chief Joseph L. Cecile, Ryan Linnertz, Eric Gerace, and Richard Bougourd (collectively "Defendants") are the following two motions: (1) Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c); and (2) Plaintiffs' cross-motion to amend the Complaint. (Dkt. Nos. 18, 24.) For the reasons set forth below, Defendants' motion is granted in part and denied in part, and Plaintiffs' cross-motion to amend the Complaint is granted.

## I.  RELEVANT BACKGROUND

### A.  Plaintiffs' Complaint

Generally, in their Complaint, Plaintiffs assert nine claims, which the Court has construed as the following: (1) a claim of unlawful search and seizure/false arrest pursuant to the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983 ("Section 1983"); (2) a claim of excessive force pursuant to the Fourteenth Amendment of the United States Constitution and Section 1983; (3) a claim of municipal liability as to Defendant City of Syracuse, Defendant Syracuse Police Department, and Defendant Cecile pursuant to Section 1983; (4) a claim of false imprisonment/false arrest in violation of New York common law; (5) a claim of assault and battery in violation of New York common law; (6) a claim of negligence in violation of New York common law; (7) a claim of negligent training, retention, hiring, and supervision in violation of New York common law; (8) a claim that Defendant City of Syracuse, Defendant Syracuse Police Department, and Defendant Cecile are vicariously liable for the other

2

Defendants' actions under a theory of respondeat superior; and (9) a claim that Defendants' actions violated their rights under the New York State Constitution.[2]

### B.    Parties' Briefing on the Motions

#### 1.    Defendants' Memorandum of Law

Generally, in their motion, Defendants make nine arguments.  (Dkt. No. 18, Attach.1.) First, Defendants argue that all statements in the Complaint made "upon information and belief" should be disregarded because they are not supported by plausible factual allegations.  (*Id.* at 15-18.)

Second, Defendants argue that the claims against the individual Defendants in their official capacities must be dismissed because they are duplicative of the claims against Defendant City of Syracuse.  (*Id.* at 18.)

Third, Defendants argue that claims against Defendant Syracuse Police Department must be dismissed because a police department is an administrative arm of the City of Syracuse itself and cannot be sued.  (*Id.* at 19.)

Fourth, Defendants argue that Plaintiffs' use of group pleading in the Complaint both fails to meet the "fair notice" requirement of Fed. R. Civ. P. 8 and fails to plausibly suggest the personal involvement of the various Defendants.  (*Id.* at 19-21.)  More specifically, Defendants argue that Plaintiffs have failed to identify how the individual Defendants caused the damages Plaintiffs claim, most notably the damages caused by Defendant Gerace.  (*Id.*)

---

[2]    Although the Complaint also appears to suggest that Plaintiffs are asserting claims for malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress, Plaintiffs have affirmatively stated in their opposition memorandum of law that they are not asserting such claims.  (Dkt. No. 24, Attach. 1, at 23.)

Fifth, Defendants argue that all claims brought against Defendant City of Syracuse, Defendant Cecile, or Defendant Gerace in their supervisory capacities must be dismissed for the following reasons: (a) Plaintiffs have not alleged facts to plausibly suggest that they were personally involved in the alleged violations as already argued; (b) Plaintiffs have not alleged facts to plausibly suggest that these Defendants were negligent in training, retaining, hiring, or supervising, because (i) they have failed to plead facts plausibly suggesting that these Defendants had any knowledge of prior acts by the other Defendants or of a propensity to commit acts such as those alleged here, (ii) Defendant City of Syracuse concedes that the other relevant Defendants were acting within the scope of their employment as police officers and Plaintiffs themselves allege that they acted in their official capacities, and (iii) a claim for negligent hiring, training, or supervision cannot be brought under New York law where the plaintiff's theory is actually premised on respondeat superior (as it is here); and (c) as to respondeat superior claims against Defendant Cecile and Defendant Gerace, such claims cannot be brought against mere supervisors. (*Id.* at 22-27.)

Sixth, Defendants argue that Plaintiffs' claims for false arrest, unconstitutional search and seizure, and malicious prosecution must be dismissed, because (a) the relevant Defendants possessed reasonable suspicion to detain Plaintiff Christian Smith based on statements in Defendant Linnertz's police report that is attached to the Complaint, (b) the relevant Defendants had probable cause to arrest Plaintiff Emree Smith also based on Plaintiffs' own allegations and the police reports of Defendant Linnertz and Defendant Bougourd that are attached to the Complaint, and (c) the existence of probable cause also precludes a malicious prosecution claim. (*Id.* at 28-32.)

4

Seventh, Defendants argue that any claim of excessive force by Plaintiff Christian Smith must be dismissed because he has not alleged facts plausibly suggesting any injury resulting from being forced to the ground and handcuffed.  (*Id.* at 32-34.)

Eighth, Defendants argue that Plaintiffs' claims against Defendant City of Syracuse must be dismissed because they have failed to plead facts plausibly suggesting the existence of a policy or custom that permitted the alleged constitutional violations to occur.  (*Id.* at 34-38.) They additionally argue that Plaintiffs have not pleaded any constitutional violation that would form the basis of any claim for municipal liability.  (*Id.* at 38-39.)

Ninth, Defendants argue that Plaintiffs' various state law claims must be dismissed for the following reasons: (a) the use of force and false arrest claims merge with or are duplicative of their Section 1983 counterparts; (b) Plaintiffs' constitutional claims cannot be brought because there are alternative remedies available in the form of the other causes of action asserted; (c) Plaintiffs' IIED claims are duplicative of their other claims and not supported by plausible factual allegations; and (d) Plaintiffs' NIED claims are not supported by any factual allegations plausibly suggesting that a relevant duty existed as to a direct duty theory, or that the injuries suffered would be sufficient to sustain a claim under a bystander theory.  (*Id.* at 39-43.)

### 2. Plaintiffs' Opposition Memorandum of Law and Cross-Motion to Amend the Complaint

Generally, in their opposition memorandum of law, Plaintiffs make eight arguments. (Dkt. No. 24, Attach. 1.)  First, Plaintiffs argue that they have not merely made conclusory allegations "on information and belief," but instead have provided a factual basis for all of their allegations.  (*Id.* at 10-12.)

5

Second, Plaintiffs argue that they are permitted to plead alternate theories of liability, even where such theories may be inconsistent with each other, specifically their facially inconsistent claims of respondeat superior and negligent hiring, training, and supervision under New York law, as well as their Section 1983 and state law constitutional claims. (*Id.* at 12-14.)

Third, Plaintiffs argue that they have adequately pleaded personal involvement by Defendant Linnertz, Defendant Bougourd, and Defendant Gerace, and admit that Defendant Cecile is sued only in his official capacity. (*Id.* at 15-16.)

Fourth, Plaintiffs argue that they have not asserted any excessive force claim on behalf of Plaintiff Christian Smith, that Defendants have not sought to dismiss the state law constitutional claims for respondeat superior against Defendant City of Syracuse and Defendant Syracuse Police Department, and that, to the extent Defendants have argued that the respondeat superior claim against Defendant Cecile should be dismissed, he is more than merely a supervisor, but rather a policymaker and head of the Police Department. (*Id.* at 16-18.)

Fifth, Plaintiffs argue that they have adequately pleaded claims for false arrest, false imprisonment, illegal search and seizure, excessive force, assault and battery, state law municipal liability, and negligent hiring, retention, training, and supervision for the follow reasons: (a) they allege that they were stopped, detained, and arrested without any reason and suspicion, and any factual disputes raised by the police reports should not be resolved at this stage; (b) Plaintiff's unreasonable search and seizure claim under the New York Constitution "is subject to its own interpretation" and should not be dismissed in light of the allegations presented; and (c) they have state constitutional violations that serve as the basis for a Section 1983 claim against Defendant City of Syracuse. (*Id.* at 18-23.)

Sixth, Plaintiffs argue that they are not alleging a cause of action for malicious prosecution or for either intentional or negligent infliction of emotional distress, but rather provided allegations regarding the prosecution and emotional distress related to the element of damages. (*Id.* at 23.)

Seventh, Plaintiffs argue that Defendants' motion is an inappropriate attempt to seek summary judgment before the completion of discovery for the following reasons: (a) Defendants are attempting to have certain facts be deemed to be undisputed, including that they were acting within the scope of their employment; and (b) Defendants have made factual assertions that are disputed by Plaintiff, including whether Plaintiff Christian Smith was under arrest, whether Plaintiff Emree Smith's arrest was based on probable cause, and why Plaintiff Christian Smith was detained for as long as he was. (*Id.* at 23-26.)

Eighth, Plaintiff argues that, should the Court find that they have failed to state any of the relevant claims, they should be permitted to amend their Complaint, or the Court should dismiss any inadequate claims only without prejudice. (*Id.* at 26.) They further cross-move to amend the Complaint to add a *Monell* claim against Defendant City of Syracuse based on statements made by Defendant Cecile regarding a policy or practice of training officers to punch arrestees. (*Id.* at 26-27.)

### 3.    Defendants' Reply Memorandum of Law

Generally, in reply, Defendants make seven arguments. (Dkt. No. 26.) First, Defendants argue that Plaintiffs have failed to oppose many arguments raised in their initial memorandum of law and therefore the claims that are the subject of those arguments should be dismissed as abandoned. (*Id.* at 5-7.) Specifically, Defendants argue that Plaintiffs have failed to oppose the

following arguments: (a) that dismissal of all claims against Defendant Syracuse Police Department is warranted due to the fact that they are an agency of Defendant City of Syracuse (who is the proper party against whom such claims must be asserted); (b) that Plaintiffs have failed to state a malicious prosecution claim; (c) that the Complaint lacks any allegations regarding knowledge by Defendant City of Syracuse or Defendant Cecile of any propensity for similar conduct by the relevant individual officer Defendants as required for a negligent hiring, supervision, and training claim under New York law; and (d) that respondeat superior does not apply to individual supervisors under New York law.  (*Id.*)

Second, Defendants argue that Plaintiffs have not shown how their allegations "upon information and belief" are not merely conclusory.  (*Id.* at 7-9.)

Third, Defendants argue that Plaintiffs did not respond to their argument that claims against the officer Defendants in their official capacities must be dismissed as redundant of their claims against Defendant City of Syracuse.  (*Id.* at 9.)

Fourth, Defendants argue that Plaintiffs have not pleaded a claim for negligent training, retention, hiring, or supervision under either federal or state law, because such a claim requires that the defendant acted outside the scope of his or her authority and Plaintiffs have pleaded no such plausible facts and instead have pled to the contrary that they acted in their official capacities.  (*Id.* at 10-11.)

Fifth, Defendants argue that Plaintiffs have not adequately pleaded personal involvement for the Section 1983 claims because their allegations are all conclusory and insufficient to sustain their claims.  (*Id.* at 11-12.)

8

Sixth, Defendants argue that Plaintiffs improperly construe their motion as one for summary judgment despite the fact that Defendants rely only upon documents that are attached to the Complaint (and therefore properly considered on a motion for judgment on the pleadings). (*Id.* at 12-13.)

Seventh, Defendants argue that Plaintiffs' request to amend the Complaint should be denied because the proposed amendments are futile in that they fail to remedy the relevant deficiencies in Plaintiff's original Complaint, including as to the *Monell* claim. (*Id.* at 13-14.)

## II.   GOVERNING LEGAL STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases). It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

9

to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court

10

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

11

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[3]

---

[3]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not

III.     ANALYSIS

    A.     **Whether Plaintiffs' Claims Against Defendant Syracuse Police Department and the Individual Defendants in Their Official Capacities Must Be Dismissed**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order.  To those reasons, the Court adds the following analysis.

As to Defendant Syracuse Police Department, as Defendants argue, "[d]epartments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot be sued." *Muhammad v. Suffolk Cnty. Support*, 24-CV-1141, 2025 WL 606560, at \*6 (N.D.N.Y. Jan. 28, 2025) (Lovric, M.J.) (collecting cases), report-recommendation adopted by 2025 WL 603917 (N.D.N.Y. Feb. 25, 2025) (Brindisi, J.); *see also Johnson v. Syracuse Police Dept.*, 20-CV-1055, 2020 WL 8254417, at \*5 (N.D.N.Y. Nov. 10, 2020) (Lovric, M.J.) (dismissing claims against Syracuse Police Department and

---

incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

Onondaga County Sheriff's Department because they are merely administrative arms of their respective municipalities and therefore cannot be sued), report-recommendation adopted by 2021 WL 214374 (N.D.N.Y. Jan. 21, 2021) (Suddaby, C.J.).  Because Defendant Syracuse Police Department is an administrative agency of Defendant City of Syracuse, Plaintiffs cannot assert any legally valid claim against the police department specifically, and so any claims it has asserted against that entity must be dismissed.

As to the individual Defendants, Defendants are also correct that Plaintiffs' claims against them in their official capacities pursuant to Section 1983 are more properly against Defendant City of Syracuse itself.  "Where a plaintiff sues both the municipality and a municipal official in his official capacity, courts consistently dismiss the official capacity claim as 'duplicative' of the claim against the municipality."  *Perfetto v. City of New York*, 14-CV-2682, 2015 WL 590205, at *3 (E.D.N.Y. Feb. 11, 2015) (citing *Thomas v. Venditto*, 925 F. Supp. 2d 352, 364 [E.D.N.Y. 2013]); *accord Telian v. Town of New Delhi*, 14-CV-0945, 2015 WL 136096, at *10 (N.D.N.Y. Jan. 9, 2015) (McAvoy, J.); *see also Coon v. Town of Springfield, Vermont*, 404 F.3d 683, 687 (2d Cir. 2005) (noting that "a [Section] 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself").  Because Plaintiffs have sued Defendant City of Syracuse here, any official capacity claims against the individual Defendants (who all are employed by an administrative agency of Defendant City of Syracuse) are duplicative of the claims against the City itself and should be dismissed.

14

For the above reasons, the Court grants Defendants' dismissal of all claims against Defendant Syracuse Police Department and all Section 1983 claims against Defendant Cecile, Defendant Linnertz, Defendant Gerace, and Defendant Bougourd in their official capacities.

**B.     Whether Plaintiffs Have Stated Any Cognizable Claim Pursuant to the New York State Constitution**

After careful consideration, the Court answers the above question in the negative as to Defendant Linnertz and Defendant Bougourd for the reasons stated in Defendants' memoranda of law, *see, supra,* Parts I.B.1 and I.B,3 of this Decision and Order, but in the affirmative as to claims against Defendant Cecile, Defendant Gerace, and Defendant City of Syracuse to the extent Plaintiffs have asserted state law constitutional claims against those Defendants pursuant to a theory of respondeat superior, *see, supra,,* Part I.B.2 of this Decision and Order.  To those reasons, the Court adds the following analysis.

"'Courts in this Circuit have uniformly held that no private right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution.'" *Forrest v. Cnty of Greene*, 676 F. Supp. 3d 69, 79 (N.D.N.Y. 2023) (Sharpe, J.) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 408 [S.D.N.Y. 2021]).  This Court has recently found that, in cases where a plaintiff alleges liability based on respondeat superior, Section 1983 (which does not permit vicarious liability) does not provide an adequate alternative remedy for a state constitutional claim seeking such vicarious liability.  *Forrest*, 676 F. Supp. 3d at 79-80 (collecting cases).

As discussed above in Part I.A. of this Decision and Order, Plaintiffs have asserted a number of claims pursuant to Section 1983, New York common law, and the New York Constitution.  To the extent that Plaintiffs have asserted Section 1983 claims for unlawful search

15

and seizure and excessive force against the individual Defendants based on a theory of direct (as opposed to vicarious) liability, any parallel claims pursuant to the New York State Constitution must be dismissed based on the existence of an adequate alternative remedy for those claims. *See Forrest*, 676 F. Supp. 3d at 80-81 (finding that although the state constitutional cause of action could not be maintained against individual defendants who the plaintiff did not seek to hold liable under a theory of respondeat superior related to claims for unlawful search and seizure, that cause of action could survive as to defendants against whom that respondeat superior theory was asserted). Specifically, Plaintiffs Complaint asserts liability against Defendant Linnertz and Defendant Bougourd based upon their own actions, not based on any sort of vicarious or supervisory liability, and therefore any claims pursuant to the New York Constitution against those Defendants must be dismissed based on the existence of an alternative remedy. However, claims against Defendant Cecile and (seemingly) Defendant Gerace are based on a theory of vicarious liability, and as a result Section 1983 does not provide an adequate alternative remedy for any parallel state constitutional violation in their case. Similarly, at least a handful of courts within this Circuit have found that the mechanism of municipal liability pursuant to Section 1983 does not provide an adequate alternative remedy to a state law constitutional claim based upon a theory of respondeat superior. *See Jean-Charles v. City of New York*, 21-CV-3802, 2024 WL 5716606, at *19 (E.D.N.Y. Feb. 21, 2024) (citing *Herrera v. Shea*, 20-CV-3665, 2020 WL 7711856, at *10 [E.D.N.Y. Dec. 29, 2020]). As a result, Section 1983 also does not provide an alternative adequate remedy for any state law constitutional claim based on respondeat superior asserted against Defendant City of Syracuse.

16

For the above reasons, any claims based on the New York State Constitution for unlawful search and seizure/false arrest and excessive force against Defendant Linnertz and Defendant Bougourd are dismissed, but such claims against Defendant City of Syracuse, Defendant Cecile, and Defendant Gerace are found to be cognizable to the extent they are based upon a theory of respondeat superior.

### C.    Whether Plaintiffs Have Stated Claims for False Arrest and Unlawful Search and Seizure

After careful consideration, the Court answers the above question in the negative as to Plaintiff Christian Smith, but in the affirmative as to Plaintiff Emree Smith for the following reasons.

As an initial matter, Defendants argue that nearly all of Plaintiffs' factual allegations must be disregarded because they are made in a conclusory manner only upon information and belief rather than personal knowledge.  (Dkt. No. 18, Attach. 1, at 15-18.)  Although the Court does not agree that all allegations made upon information and belief must be disregarded as factually implausible,[4] it does note that, where such allegations conflict with either other allegations in the Complaint or documents upon which the Complaint relies, the Court need not accept those allegations made upon information and belief as true.  *See Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (noting that, at the pleading stage, "the court must generally accept as true all of the factual assertions in the complaint," but that "there is a narrow exception

---

[4]    *See, e.g., Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, . . .  or where the belief is based on factual information that makes the inference of culpability plausible . . . .") (internal quotation marks and citations omitted).

17

to this rule for factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice") (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 [2d Cir. 1995]; *Salahuddin v. Jones*, 992 F.2d 447, 449 [2d Cir. 1993]).  Plaintiffs' Complaint attaches a number of exhibits in addition to the Complaint itself, which includes multiple reports generated by various Defendants in this case related to the incident underlying Plaintiffs' claims.  Because these documents have been made part of the Complaint by Plaintiffs themselves, the Court is, as a general matter, permitted to consider those documents on this Fed. R. Civ. P. 12(c) motion, including to the extent it may contradict allegations made within the Complaint.

That being said, the Second Circuit has cautioned that "a plaintiff does not necessarily 'adopt as true *the full contents* of any document attached to a complaint or adopted by reference.'"  *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025) (quoting *Grant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 [2d Cir. 1995]) (emphasis in original).

> For example, where the plaintiffs attached a document that they alleged was a defendant's 'self-serving document,' it was 'error for the district court to assume that plaintiffs' complaint adopted the [defendant's] exculpatory conclusions.'  *Id.* at 675.  '*Rather than accepting [as true] every word* in a unilateral writing by a defendant and attached by a plaintiff to a complaint,' the court must '*consider why a plaintiff attached the documents.*'  *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) (emphasis added).  '*The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant*.  Such unilateral documents may reflect *the defendant's version of contested events* or contain self-serving, exculpatory statements that are *unlikely to have been adopted by the plaintiff*.'  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 168 (4th Cir. 2016) (emphasis added).  And '[t]reating the contents of such a document as true simply because it was attached to or relied upon in the complaint, even though the plaintiff relied on it for purposes other than truthfulness, would…

18

> enable parties to hide behind untested, self-serving assertions.' *Id.*
> (internal quotation marks omitted).

*Pearson*, 125 F.4th at 406-07.

Under the circumstances presented here, the Court cannot conclude that Plaintiffs' decision to attach the police reports of Defendant Bougourd and Defendant Linnertz in any way suggests that they intended to adopt the factual content of those reports. Plaintiffs themselves contradict any such conclusion by arguing that those reports are self-serving and were included merely because they were attached to the Plaintiffs' notices of claim to Defendant City of Syracuse. (Dkt. No. 24, Attach. 1, at 21.) As a result, to the extent that those police reports create any factual dispute with the allegations in Plaintiffs' Complaint or contain factual allegations that Plaintiffs clearly did not intend to adopt, the Court may not consider those "self-serving" factual allegations. *See Pearson*, 125 F.4th at 408 (finding the district court's acceptance of the factual content included in a misbehavior report that was prepared by the defendant and attached to the complaint was improper because plaintiff's inclusion of that document could not reasonably be construed as his having relied upon the document's self-serving assertions when drafting the complaint).

The Court will also not consider the various additional documents and files that Plaintiffs have submitted with their opposition memorandum of law, which includes footage of the incident from Defendant Linnertz's body camera and transcripts from the 50-h examinations of Plaintiff Emree Smith and Plaintiff Christian Smith's mother, Ishanna McDonnell. Contrary to Plaintiffs' argument, there is no basis for construing Defendants' motion as being a motion for summary judgment that would warrant the consideration of materials outside of the narrow constraints of what is acceptable for a motion for judgment on the pleadings. Plaintiffs also

notably do not assert that they relied upon the proffered material when formulating their Complaint in a manner that would render it integral to the Complaint, and it is not incorporated by reference into the Complaint.  As a result, consideration of these documents and files would be improper.

Turning to the merits of Plaintiffs' claims, as discussed above, they have asserted claims for illegal search and seizure and false arrest[5] pursuant to Section 1983, as well as a claim for false arrest under New York law.  All of these claims can be defeated where a defendant officer possessed some required degree of suspicion or cause to detain, arrest, or search an individual. *See Florida v. Harris*, 568 U.S. 237, 243 (2013) ("A police officer has probable cause to conduct a search when 'the facts available to [him] would warrant a [person] of reasonable caution in the belief' that contraband or evidence of a crime is present.") (quoting *Texas v. Brown*, 460 U.S. 730, 742 [1983]); *United States v. Singletary*, 798 F.3d 55, 59-60 (2d Cir. 2015) (indicating that an investigative stop may be conducted where the officer has a reasonable basis for thinking that the individual to be detained has committed or is committing a criminal offense); *Jenkins v. City of New York*, 478 F.3d 76, 84-85 (2d Cir. 2007) (noting that the existence of probable cause is a complete defense to a false arrest claim brought pursuant to either Section 1983 or state law).

---

[5]    The elements of a false arrest or imprisonment claim under New York law are as follows: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Kweller v. Cnty. of Broome*, 24-CV-1328, 2025 WL 3280745, at *4 (N.D.N.Y. Nov. 25, 2025) (Brindisi, J.) (quoting *Hernandez v. United States*, 939 F.3d 191, 199 [2d Cir. 2019]); *see also Alberty v. Hunter*, 144 F.4th 408, 414-15 (2d Cir. 2025) ("Courts should 'generally look to the law of the state in which the arrest occurred' to determine the elements of a § 1983 claim for false arrest.") (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 [2d Cir. 2004]).

Relevant to the question of the existence of reasonable suspicion and probable cause, in the Complaint, Plaintiffs include the following allegations, all of which are made "upon information and belief": (a) they were riding electric bicycles in the area of South Geddes Street at the intersection with Strathmore Drive in the City of Syracuse on September 6, 2023, at approximately 12:10 a.m.; (b) "at that time, Plaintiffs were stopped by Defendant Linnertz, who attempted to question them without any reason or suspicion"; (c) "Defendant Linnertz did not notify either Plaintiff of the reason that they were being stopped, nor did he notify either of them that he believed that they had committed a traffic infraction by not stopping at a stop sign"; (d) "when Plaintiff Christian Smith legally attempted to leave, Defendant Linnertz chased him, forcibly stopped him, detained him, and began to frisk him"; (e) "Defendant Linnertz claimed that he saw Plaintiff Christian Smith reach for something in his front hoodie pocket," and although Plaintiffs told him it was only a cell phone, Defendant Linnertz called for back-up and continued to frisk Plaintiff Christian Smith; (f) while Defendant Linnertz was restraining and frisking Plaintiff Christian Smith, Plaintiff Emree Smith "went towards" them and was thrown to the ground by Defendant Bougourd and, at some point during that altercation, punched in the face by Defendant Linnertz, before being handcuffed, frisked, arrested, and detained in the back of a police vehicle; (g) Plaintiff Christian Smith was forced to the ground, handcuffed, frisked, and detained in the back of a police vehicle; and (h) Plaintiffs were detained for approximately an hour-and-a-half. (Dkt. No. 2, at ¶¶ 8-21.)

Regarding the initial stop of the Plaintiffs, the Court need not accept as true Plaintiffs' conclusory allegation that Defendant Linnertz stopped them "without any reason or suspicion" or that Plaintiff Christian Smith's attempt to leave was "legal." (Dkt. No. 2, at ¶ 9, 11.) These

allegations are made "upon information and belief" rather than any specific factual basis and, more importantly, are legal conclusions rather than factual allegations. As a result, these conclusory allegations are insufficient to plausibly suggest that the initial stop or search of Plaintiffs was unlawful or unreasonable.

Removing those conclusory assertions from the equation, Plaintiffs' only allegation regarding the initial stop is that "Defendant Linnertz did not notify either Plaintiff of the reason that they were being stopped, nor did he notify either of them that he believed that they had committed a traffic infraction by not stopping at a stop sign." (Dkt. No. 2, at ¶ 10.) Even accepting this factual allegation as true (as the Court must on a motion for judgment on the pleadings), the fact that Defendant Linnertz did not tell Plaintiffs the reason for stopping them does not plausibly suggest that he had no basis for stopping them. Plaintiffs notably have not alleged that they did *not* commit any traffic violations, and in fact the Complaint alleges that they were both issued traffic tickets for failing to stop at a stop sign at the conclusion of the encounter. (*Id.* at ¶¶ 24-25.) That those charges were eventually dismissed does not mean that Defendant Linnertz lacked a reasonable basis for stopping Plaintiffs at the outset. (*Id.* at ¶¶ 26-27.) Further, a violation of vehicle and traffic laws constitutes a sufficient basis to initiate an investigatory stop. *See United States v. Martinez-Rodriguez*, 798 F. Supp. 3d 289, 295 (N.D.N.Y. 2025) (Nardacci, J.) ("[T]raffic stops must satisfy the Fourth Amendment's reasonableness limitation, which requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.") (quoting *United States v. Gomez*, 877 F.3d 76, 86 [2d Cir. 2017]). Because Plaintiffs do not actually allege that they did

22

not commit the relevant vehicle and traffic violation (or that circumstances rendered any belief by Defendant Linnertz that they had committed such a violation unreasonable at the outset), the factual allegations provided in the Complaint do not plausibly suggest that the initial traffic stop of Plaintiffs was unreasonable.

Turning to the events after the initial stop had commenced, as to the claim by Plaintiff Christian Smith, Plaintiffs' own factual allegations plausibly suggest that, before Defendant Linnertz detained or attempted to frisk him, Plaintiff Christian Smith "attempted to leave" and that Defendant Linnertz indicated to them that he believed he saw Plaintiff Christian Smith reach for something in his hoodie pocket, which led to Defendant Linnertz attempting to frisk him and ultimately his being "forced to the ground, handcuffed, frisked, and detained in the back of a police vehicle." (Dkt. No. 2, at ¶ 11-14, 20.) The Court also notes that, as a general matter, the Complaint alleges that the incident occurred at approximately 12:10 a.m. (*Id.* at ¶ 8.) Plaintiffs' own allegation that Plaintiff Christian Smith attempted to leave after Defendant Linnertz approached him with reasonable suspicion to conduct a stop, in conjunction with the allegation that Defendant Linnertz expressed that he suspected Plaintiff Christian Smith was reaching for something in his pocket, defeats Plaintiffs' efforts to argue that his seizure was unreasonable. *See United States v. Anderson*, 24-CR-0219, 2024 WL 4512233, at *5 (S.D.N.Y. Oct. 17, 2024) (finding that "there can be no dispute that Defendant's attempt to flee supports a finding of probable cause to arrest" where the defendant attempted to run away while the officer was attempting to search and handcuff him) (citing *United States v. Babilonia*, 854 F.3d 163, 179 [2d Cir. 2017]; *United States v. Martinez-Gonzalez*, 686 F.2d 93, 102 [2d Cir. 1982]); *Santiago v. City of Rochester*, 481 F. Supp. 3d 152, 158-59 (W.D.N.Y. 2020) (finding probable cause to

23

defeat false arrest claim despite allegations of mistaken identity where the officer observed a red

Toyota commit traffic violations as well as received information that the same car had been

involved in a hit-and-run accident, the officer saw the plaintiff's similar vehicle close in time to

when he had previously seen the Toyota, and the officer saw plaintiff flee by foot after he turned

on his lights and sirens).

Regarding the search and detention of Plaintiff Emree Smith, Plaintiffs' own factual

allegations plausibly suggest that Plaintiff Emree Smith "went towards" where Defendant

Linnertz was attempting to frisk and detain Plaintiff Christian Smith, which resulted in his being

"thrown to the ground…and forcibly restrained by Defendant Bougourd" before being

"handcuffed, frisked twice, his backpack was cut off him, he was told he was under arrest, and

he was detained in the back of a police vehicle." (Dkt. No. 2, at ¶ 15, 17.)  The fact that Plaintiff

Emree Smith "went towards" Defendant Linnertz as the officer was attempting to frisk and

detain Plaintiff Christian Smith is insufficient to make a finding that probable cause existed as a

legal matter.  Notably, there is nothing in these factual allegations to plausibly suggest that

Plaintiff Emree Smith had attempted to flee or was suspected of having a weapon, or that he

indeed engaged in any conduct other than the original traffic violation and the act of moving

toward Defendant Linnertz and his brother in an undefined manner.  Defendants argue that the

fact that Plaintiff Emree Smith moved toward Defendant Linnertz while that officer was

attempting to detain and frisk Plaintiff Christian Smith is sufficient to show that there was

probable cause to arrest him for obstructing governmental administration.  (Dkt. No. 18, Attach.

1, at 31.)  However, the mere fact of moving toward an officer in an undefined manner does not

inherently suggest that the action constituted intimidation or physical interference as generally

24

required for such a charge. *See Dancy v. McGinley*, 843 F.3d 93, 111-12 (2d Cir. 2016) (noting that an arrest for obstruction of governmental administration must involve intimidation, physical interference with an official function authorized by law, or an independently unlawful act). Defendants' argument that Plaintiff Emree Smith's actions reasonably met the criteria for such a charge is based in large part on the police reports of Defendant Linnertz and Defendant Bougourd, which, as the Court has already indicated, it may not consider as part of Plaintiffs' allegations because context makes it clear that Plaintiffs' inclusion of those reports as an exhibit to the Complaint was not intended to suggest that they adopted the version of the facts asserted within those reports. Rather, on this motion, Plaintiffs' actual allegations must be accepted as true, and the Court finds that this limited assessment leads to the conclusion (albeit narrowly) that Plaintiffs have plausibly alleged that Defendants lacked probable cause to arrest Plaintiff Emree Smith.

Although certain documents available to the Court at the time of this motion (many of which, as already discussed, the Court may not consider without converting this motion to one for summary judgment, which it declines to do here) suggest that the situation surrounding Defendant Bougourd's seizure and arrest of Plaintiff Emree Smith is perhaps more complicated than indicated by Plaintiffs' allegations, such factual questions would be better resolved on a motion for summary judgment after the parties have had an opportunity to engage in full discovery. The Court notably reaches no conclusion regarding how Plaintiffs' claim would fare on such a motion. For the purposes of the current motion, Plaintiffs' Complaint has alleged facts at least plausibly suggesting that Defendant Bougourd lacked probable cause to detain and arrest Plaintiff Emree Smith at the relevant time.

25

**D.        Whether Plaintiffs Have Sufficiently Pleaded Negligence Claims (Other than a Claim of Negligent Hiring, Training, Retention, and Supervision) Pursuant to New York Law**

After careful consideration, the Court answers the above question in the negative for the following reasons, but will permit Plaintiffs the opportunity to show cause as to why these claims should not be dismissed.

"Under New York law, 'when a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie.'" *Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 478-79 (W.D.N.Y. 2017) (quoting *Dineen ex rel. Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 [S.D.N.Y. 2002]); *see also Epps v. City of Schenectady*, 10-CV-1101, 2013 WL 717915, at *6 (N.D.N.Y. Feb. 27, 2013) (D'Agostino, J.) ("If the plaintiff alleges intentional conduct in support of a claim for excessive force or battery, he may not also base a claim for negligence on that same conduct."). Although plaintiffs are generally permitted to plead alternative or inconsistent claims, negligence claims raised in the same action as excessive force and assault claims that are premised on intentional conduct should be dismissed if the conduct alleged can give rise to liability only for an intentional (rather than a negligent) act. *See Gonzalez v. City of Rochester*, 16-CV-6652, 2020 WL 5032026, at *4 (W.D.N.Y. Aug. 26, 2020) (dismissing negligence claim where the facts alleged showed only intentional conduct as the basis for the claims) (citing *Vilkhu v. City of New York*, 06-CV-2095, 2008 WL 1991099, at *9 [E.D.N.Y. May 5, 2008]; *Bah v. City of New York*, 13-CV-6690, 2014 WL 1760063, at *13 [S.D.N.Y. May 1, 2014]).

Here, Plaintiffs' above-referenced negligence claims are all premised on the same *intentional* conduct that underlies his Section 1983 claims for unconstitutional search and seizure

26

and excessive force, as well as the intentional torts of false arrest/imprisonment and assault/battery. The fact that, in the section related to their negligence claims, Plaintiffs frame those actions as negligent or reckless does not alter the fact that the more detailed factual allegations earlier in the Complaint allege facts plausibly suggesting that such conduct was, in fact, intentional.

The Court acknowledges, however, that Defendants have not sought dismissal of Plaintiffs' above-referenced negligence claims on this particular ground, but also acknowledges that this omission appears to be based only on the fact that Defendants did not liberally construe Plaintiffs' Complaint as containing any negligence claims beyond negligent hiring, training, retention and supervision and negligent infliction of emotional distress. (*See* Dkt. No. 18, at 4 [listing the causes of action Defendants construed from Plaintiffs' allegations].) Although Defendants' construction of the claims as primarily being premised on intentional conduct suggests that they have raised (and given Plaintiffs notice of) the point of law relied on by the Court in this part of its Decision and Order, the Court finds that the most appropriate course of action is to permit Plaintiffs an opportunity to respond to this point due to Defendants' failure to explicitly raise it. The Court therefore orders that Plaintiffs shall, within fourteen days of the entry of this Decision and Order, show cause as to why their negligence claims should not be dismissed for the reason outlined above.

### E.     Whether Plaintiffs Have Sufficiently Pleaded Certain Claims Against Defendant City of Syracuse, Defendant Cecile, and Defendant Gerace

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis.

27

### 1.    Claim of Municipal Liability Pursuant to Section 1983

As discussed above, the Court construes Plaintiffs' Complaint as purporting to assert a claim for municipal liability against Defendant City of Syracuse.  Specifically, Plaintiffs allege that (a) Defendant City of Syracuse employed Defendant Linnertz, Defendant Gerace, and Defendant Bougourd at the relevant time, and (b) it not only hired and employed those Defendants, but it failed to properly train and supervise its police officers (including those Defendants), failed to have proper policies and procedures in place, and failed to properly communicate with and/or train its police officers (including those Defendants) regarding any relevant policies or procedures.  (Dkt. No. 2, at ¶¶ 51-54.)

"'The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right.'"  *Chislett v. New York City Dep't of Educ.*, 157 F.4th 172, 184 (2d Cir. 2025) (quoting *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 [2d Cir. 2020]).  "A municipality cannot be held liable on a theory of *respondeat superior*; the plaintiff must establish that the municipality's policy or custom *itself* was a 'moving force of the constitutional violation.'"  *Chislett*, 157 F.4th at 184 (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 [1978]) (emphasis in original).

"'To show a policy, custom, or practice [justifying municipal liability], the plaintiff need not identify an express rule or regulation.'"  *Chislett*, 157 F.4th at 184 (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 [2d Cir. 2004]) (alteration in original).  "It suffices to establish that discriminatory practices were 'persistent and widespread' so as 'to constitute a custom or usage with the force of law' and that a discriminatory practice of subordinates was 'so manifest as to imply the constructive acquiescence of senior policymaking officials.'"  *Chislett*,

28

157 F.4th at 184 (quoting *Surlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 [2d Cir. 1992]).

As Defendants argue, Plaintiffs' conclusory allegations are insufficient to state a claim of municipal liability. Specifically, Plaintiffs do not identify any policy or procedure that was supposedly in place, or even the existence of a persistent or widespread custom rather than an official policy, that resulted in the alleged conduct by Defendants or the alleged injuries. Plaintiffs indeed do not provide any suggestion regarding the nature of any custom or policy or how it harmed them, but merely allege in a conclusory manner that one existed. "A complaint does not sufficiently allege the existence of a municipality custom or policy 'if it tenders naked assertions devoid of further factual enhancement.'" *Chapman v. City of Albany*, 23-CV-0686, 2025 WL 295011, at *4 (N.D.N.Y. Jan. 24, 2025) (Kahn, J.) (quoting *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 [S.D.N.Y. 2012]). Because Plaintiffs' factual allegations here are plainly insufficient, the Court finds that Plaintiffs have failed to state a claim for municipal liability against Defendant City of Syracuse.

### 2. Claim of Negligent Hiring, Training, Retention, and Supervision Pursuant to New York Law

The Court has also construed Plaintiffs' Complaint as asserting a claim for negligent hiring, training, retention, and supervision under New York law.

"'Under New York law, in addition to the negligence elements of such a claim, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.'" *Miller-Harris v. Cnty. of Onondaga*,

29

22-CV-1363, 2025 WL 3022162, at *3 (N.D.N.Y. Oct. 29, 2025) (Brindisi, J.) (quoting *Rich v. Fox News Network, LLC*, 939 F.3d 112, 129 [2d Cir. 2019]).  In addition to these requirements, the tortfeasor must be acting outside the scope of their employment at the relevant time. "'Generally, where an employee is acting within the scope of his or her employment, the employer is liable for the employee's negligence under a theory of respondeat superior and no claim may proceed against the employer for negligent hiring, retention, supervision, or training.'" *Campolongo v. DR & RD, Inc.*, 241 A.D.3d 1417, 1419-20 (N.Y. App. Div. 2d Dep't Sept. 17, 2025) (quoting *Grogan v. Simon Prop. Grp., Inc.*, 192 A.D.3d 769, 772 [N.Y. App. Div. 2d Dep't Mar. 10, 2021]).

Here, Plaintiffs have alleged in their Complaint that Defendant Linnertz, Defendant Gerace, and Defendant Bougourd "were acting in their official capacity as the employees of Defendant City," and also that the various actions against Plaintiffs were taken while the Defendants "were acting under the color of New York state law."  (Dkt. No. 2, at ¶¶ 7, 34.) Plaintiffs' own factual allegations therefore plausibly suggest that the relevant Defendants were acting within the scope of their employment with the Syracuse Police Department at the time the conduct occurred.  As a result, Plaintiffs' own allegations render any claim for negligent hiring, training, retention, and supervision under New York law non-viable.

Plaintiffs cannot circumvent this fact by asserting that they are permitted to raise differing and even conflicting theories in their Complaint.  The Court is required to take Plaintiffs' allegations as true at this stage of the proceeding, and Plaintiffs' own allegations assert that the relevant Defendants acted within the scope of their employment; Plaintiffs never even suggest that they were not so acting anywhere in the Complaint.  Nor is recognizing those

30

allegations somehow improperly deciding issues of material fact before discovery as Plaintiffs

assert. There is no issue of fact to decide because Plaintiffs themselves allege that Defendants

were acting in their official capacities and under the color of state law at the time they engaged in

the relevant conduct.

Further, even setting aside the issue of whether Defendants were acting within the scope

of their employment, nothing within the Complaint plausibly suggests that Defendant City of

Syracuse or Defendant Cecile (to the extent the latter could even possibly be considered to be an

employer) knew or should have known of any propensity by Defendant Linnertz, Defendant

Bougourd, or Defendant Gerace to engage in the type of conduct alleged here. Such deficiency

is also fatal to any claim for negligent hiring, training, retention, and supervision under New

York law.[6]

As the case law quoted previously states, where a defendant employee was acting within

the scope of his or her employment, the proper avenue for asserting liability against an employer

for the employee's negligence is under a theory of respondeat superior. *Campolongo*, 241

---

[6]     Plaintiffs attempt to overcome this deficiency in their proposed Amended Complaint by alleging that "Defendant City, Defendant SPD, and/or Defendant Cecile had actual and/or constructive knowledge that their employees, including Defendant Linnertz, Defendant Gerace, and Defendant Bougourd had a propensity to act outside accepted police practice, including in, amongst other things, the conduct of stops, frisks, and arrests, and including the use of unnecessary and excessive physical force in conducting arrests." (Dkt. No. 24, Attach. 7, at ¶ 54.) However, this conclusory allegation, devoid of any factual allegations plausibly suggesting that the relevant officer Defendants did indeed have a propensity to engage in such conduct, is simply insufficient to meet Plaintiffs' pleading burden. Therefore, to the extent the proposed Amended Complaint attempts to correct the identified deficiency in the original Complaint related to this claim, such attempt is futile, and the Court's permission to file the Amended Complaint (which, as will be discussed below, is based on other grounds) does not in any way resurrect Plaintiffs' claim for negligent hiring, training, retention, and supervision.

31

A.D.3d at 1419-20.  Although Plaintiffs' listed claims do not overtly include a claim pursuant to that theory, they have alleged in a different section of the Complaint that Defendant Linnertz, Defendant Bogourd, and Defendant Gerace were all employees of Defendant City of Syracuse and Defendant Cecile and, "[a]ccordingly, Defendant City, Defendant SPD, and Defendant Cecile are vicariously liable for any and all acts of Defendant Linnertz, Defendant Gerace, and Defendant Bougourd, as well as any other SPD officer and/or employees, under the doctrine of *respondeat superior*."  (Dkt. No. 2, at ¶ 7.)  Defendants acknowledge this language in their reply memorandum of law, but do not assert any arguments as to why such claim has not been sufficiently pleaded as a general matter.[7]  Because a respondeat superior claim is the more proper avenue to assert vicarious liability for negligence based on Plaintiffs' own allegations, and because Defendants have not argued that such a claim has been deficiently pleaded, Plaintiffs' respondeat superior claim against Defendant City of Syracuse is not affected by Defendants' motion.

For the above reasons, Plaintiffs' claims for negligent hiring, training, retention, and supervision under New York law against Defendant City of Syracuse and Defendant Cecile are dismissed.

### 3.    Claims Against Defendant Cecile and Defendant Gerace

Defendants make two arguments as to why Plaintiffs' claims against Defendant Cecile and Defendant Gerace have not been adequately pleaded: (1) they argue that Plaintiffs have not alleged facts plausibly suggesting that either of those Defendants was personally involved in any

---

[7]    As will be discussed below, Defendants do challenge whether, as a legal matter, such a claim is proper against Defendant Cecile and Defendant Gerace.

32

alleged violation pursuant to Section 1983; and (2) they argue that respondeat superior liability is not applicable to supervisors.  (Dkt. No. 18, Attach. 1, at 22-27.)

### a.    Personal Involvement for Section 1983 Claims

"[P]ersonal involvement is an essential element of any claim brought under § 1983." *Keir v. Donaldson*, 25-CV-0542, 2025 WL 3442904, at *8 (N.D.N.Y. Dec. 1, 2025) (Coombe, J.) (citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 [2d Cir. 2013]).  Specifically, a plaintiff must plausibly allege "'the defendant's personal involvement in the alleged constitutional deprivation,'" including as to supervisory officials sued in their individual capacity.  *Kweller v. Cnty. of Broome*, 25-CV-0343, 2025 WL 3280821, at *14 (N.D.N.Y. Nov. 25, 2025) (Brindisi, J.) (quoting *Grullon*, 720 F.3d at 138; citing *Tangreti v. Bachmann*, 983 F.3d 609, 618 [2d Cir. 2020]).

As to Defendant Cecile, because Plaintiffs, by their own admission, have sued him only in his official capacity, any Section 1983 claim against him is more properly asserted as a municipal liability claim against Defendant City of Syracuse, and the Court does not construe the Complaint as containing any claim against him in his individual capacity.  Nevertheless, any individual claim that could be construed against him would be subject to dismissal because Plaintiffs do not provide any allegations to suggest any actions Defendant Cecile personally took. The only time Defendant Cecile is even mentioned in the substance of Plaintiffs' factual allegations is in relation to Plaintiffs' claim for municipal and supervisory liability.  (Dkt. No. 2, at ¶¶ 51-54.)

As to Defendant Gerace, Plaintiffs' only allegations specifically related to his actions are that (a) he "was the supervising officer directly responsible for Defendant Linnertz, Defendant

Bougourd, and other SPD officers present at the scene on September 6, 2023," and (b) he

"responded to the scene on September 6, 2023, and supervised, managed, and/or approved the

actions and/or omissions of Defendant Linnertz, Defendant Bougourd, and other SPD officers."

(Dkt. No. 2, at ¶¶ 22-23.)  This conclusory allegation is insufficient to plausibly suggest personal

involvement by Defendant Gerace.  First, the fact that Defendant Gerace was a supervisor is not

a sufficient basis for imposing liability, as discussed above.  Second, not only are Plaintiffs'

allegations that Defendant Gerace "supervised, managed, and/or approved" the other

Defendants' actions vague and conclusory, they have failed to allege that Defendant Gerace was

even present at the time any of the relevant conduct occurred; the Complaint indeed does not

allege when Defendant Gerace arrived at the scene, and the police reports appended to the

Complaint document that only Defendant Linnertz was present for the initial stop through the

time he was already attempting to search Plaintiff Christian Smith (which was when Defendant

Bougourd arrived on the scene).  Neither the body of the Complaint nor the attached police

reports from Defendant Linnertz and Defendant Bougourd document that Defendant Gerace had

anything to do with the initial stop, detention, or use of force against either Plaintiff.  Nor have

Plaintiffs asserted any claim for failure to intervene that might encompass Defendant Gerace

witnessing the relevant conduct (which, again, such witnessing has also not been alleged).  Much

like with Defendant Cecile, Plaintiffs' allegations related to Defendant Gerace essentially

amount to an attempt to hold him liable as a supervisor for the conduct of his subordinates,

something that is explicitly not permitted in the Second Circuit under Section 1983.  Plaintiffs'

Section 1983 claim against Defendant Gerace in his individual capacity must also be dismissed.

**b.      Respondeat Superior for State Law Claims**

34

"'Under the common-law doctrine of respondeat superior, an employer—including the State—may be held vicariously liable for torts, including intentional torts, committed by employees acting within the scope of their employment.'" *O'Brien v. City of Syracuse*, 22-CV-0948, 2025 WL 1519411, at *30 (N.D.N.Y. May 27, 2025) (D'Agostino, J.) (quoting *Rivera v. State*, 34 N.Y.3d 383, 389 [N.Y. 2019]). However, "'[t]he doctrine of respondeat superior does not apply to impose vicarious liability upon supervisors.'" *O'Brien*, 2025 WL 1519411, at *30 (quoting *Tabchouri v. Hard Eight Rest. Co., LLC*, 219 A.D.3d 528, 533 [N.Y. App. Div. 2d Dep't 2023]). "'Rather, a supervisor will generally only be held liable for the actions of a subordinate where the supervisor directed or permitted the subordinate to act in a manner that created an unreasonable risk of harm.'" *O'Brien*, 2025 WL 1519411, at *30 (quoting *Tabchouri*, 219 A.D.3d at 533).

As an initial matter, the Court does not construe Plaintiffs' Complaint as attempting to assert a vicarious liability claim against Defendant Gerace. Indeed, Plaintiffs allege that "Defendant City, Defendant SPD, and Defendant Cecile are vicariously liable for any and all acts of Defendant Linnertz, Defendant Gerace, and Defendant Bougourd . . . under the doctrine of *respondeat superior*." (Dkt. No. 2, at ¶ 7.) As a result, Defendants' argument on this issue regarding Defendant Gerace is moot. There is, however, the question of whether Defendant Gerace, who Plaintiffs do allege was "the supervising officer directly responsible for Defendant Linnertz, Defendant Bougourd, and other SPD officers present at the scene" who "supervised, managed, and/or approved the actions and/or omissions of Defendant Linnertz," is somehow liable as a supervisor for directing or permitting the relevant conduct. (Dkt. No. 2, at ¶¶ 22-23.) But again, Plaintiffs do not include any allegations regarding whether Defendant Gerace was

35

present at the scene while the various relevant allegedly unlawful conduct was taking place such that he could have "directed or permitted" Defendant Linnertz and Defendant Bougourd to "act in a manner that created an unreasonable risk of harm" in that respect. *O'Brien*, 2025 WL 1519411, at *30 (quoting *Tabchouri*, 219 A.D.3d at 533). As a result, Plaintiffs have not plausibly alleged any kind of supervisory liability as to Defendant Gerace for the New York law claims.

As to Defendant Cecile, the legal standard quoted above shows that respondeat superior imposes liability on *employers* rather than supervisors. The question is therefore whether Plaintiff has plausibly alleged that Defendant Cecile was the relevant Defendants' employer as opposed to a mere supervisor. Plaintiffs do allege that Defendant Linnertz, Defendant Bougourd, and Defendant Gerace were "employed by Defendant City, Defendant SPD, and/or Defendant Cecile." (Dkt. No. 2, at ¶ 6-7.) However, the allegation that Defendant Cecile employed the relevant Defendants is a legal conclusion that the Court is not required to accept as true. *See Iqbal*, 556 U.S. at 678 ("First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Plaintiffs have offered no allegations to plausibly suggest that Defendant Cecile (by virtue of his position as Chief of Police) constituted the employer of any of the relevant Defendants. Indeed, the only allegations Plaintiffs include about Defendant Cecile are that (a) he was "the Chief of Police of the Syracuse Police Department on all dates relevant to this Complaint," and (b) along with Defendant City of Syracuse and Defendant Syracuse Police Department, he "hired and employed inappropriate personnel, failed to properly train and supervise the police officers in their employ; failed to have proper policies and procedures in

36

place; and failed to properly communicate and/or train their police officers regarding any policies and/or procedures that were in place." (Dkt. No. 2, at ¶¶ 5, 52.) Because Plaintiffs have not alleged facts to plausibly suggest that Defendant Cecile (rather than Defendant City of Syracuse, of which the Syracuse Police Department is an administrative arm) was the "employer" of the other Defendants, any claim for respondeat superior against Defendant Cecile is duplicative and inappropriate. Rather, Defendant Cecile is, at most, a supervisor, and there are no factual allegations outside of bare conclusory ones to suggest (let alone plausibly) that Defendant Cecile "directed or permitted [the supervisee Defendants] to act in a manner that created an unreasonable risk of harm.'" *O'Brien*, 2025 WL 1519411, at *30.

For the above reasons, all claims against Defendant Gerace and Defendant Cecile are dismissed.

**F.      Whether Plaintiffs Should Be Permitted to Amend their Complaint**

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Plaintiffs' cross-motion related to their municipal liability claim. (*See* Dkt. No. 24, Attach. 1, at 26-29.) To these reasons, the Court adds the following analysis.

Plaintiffs lastly seek leave to amend the Complaint to add certain factual allegations, but primarily to supplement their municipal liability claim against Defendant City of Syracuse. (Dkt. No. 24, Attach. 1, at 26-29.) Specifically, Plaintiff adds factual allegations related to the municipal liability claim to the effect that (a) "Defendant Cecile [who at the relevant time was Chief of Police for the Syracuse Police Department] admitted during an interview with social media that SPD's police officers are trained to punch individuals in the face during arrests, characterized as 'tactical strikes,' during police academy training," (b) "[a]s the Syracuse Chief

of Police, Defendant Cecile is a policymaker for Defendant SPD," (c) "[u]pon information and belief, based upon Defendant Cecile's statements, the use of force to the face and head, including punching individuals in the face, is a part of SPD's policies, protocols, procedures, and[/]or customs in effectuating arrests, and/or is a part of widespread training for SPD's officers, and this use of force is condoned and/or encouraged by Defendant City, Defendant SPD, and Defendant Cecile," and (d) "[u]pon information and belief, the above-described policy, protocol, procedure, custom, and/or method of training was in place at the time of the September 6, 2023 incident." (Dkt. No. 24, Attach. 7, at ¶¶ 60-63.)  Specifically, Plaintiffs argue that these amendments plausibly suggest the existence of a relevant policy, practice, or custom related to the use of force during arrest that caused the harm to Plaintiff Emree Smith in this case.  (Dkt. No. 24, Attach. 1, at 29.)

Defendants' only opposition to Plaintiffs' request for leave to amend related to the municipal liability claim is that they "rel[y] on a single news article quoting Chief Cecile . . . without demonstrating a widespread policy or custom of constitutional violations."  (Dkt. No. 26, at 14.)  However, whether the alleged use of force rose to a constitutional violation is an issue that has not yet been decided, and the full text of the article referenced in Plaintiffs' proposed Amended Complaint (which the Court may consider as it is both integral to and incorporated by reference into the proposed Amended Complaint related to the relevant claim) states

> It is Chief Cecile's understanding that most of the public is not used to seeing strikes to the face, but he said they are part of reform.
>
> "There's a reason for it.  It's not punitive.  The person who's reaching under their waistband for something or just resisting, the tap to the face, you can tell it's a tactical strike because the fist

38

doesn't come way up here, it's very close and short, and there's a pause to put your hands behind your back."[8]

These statements plausibly suggests that there was an official policy within the Syracuse Police Department of officers using "tactical strikes" specifically to the face of a resisting individual in order to subdue them or prevent them from reaching into their waistband.  Here, Plaintiffs have alleged that Plaintiff Emree Smith was punched in the face by Defendant Linnertz while Defendant Bougourd was physically restraining him after he "went towards" where Defendant Linnertz was attempting to search Plaintiff Christian Smith.  (Dkt. No. 2, at ¶¶ 15-16; Dkt. No. 24, Attach. 7, at ¶¶ 16-17.)  Plaintiffs' proposed Amended Complaint therefore plausibly alleges not only that a policy existed, but also that Plaintiff Emree Smith's injury (i.e., bleeding from his nose and face) was caused by the alleged policy.  Accordingly, the Court grants Plaintiffs' request to file the Amended Complaint.

However, to the extent Plaintiffs have made other factual additions to the proposed Amended Complaint, the Court finds that those additional factual allegations do not correct the pleading deficiencies in the other claims that were discussed above, including as to personal involvement of Defendant Gerace and Defendant Cecile and the claim for negligent hiring, training, retention, and supervision under New York law.  Specifically, the added factual allegations related to those claims are little more than conclusory assertions that do not meet Plaintiffs' burden of plausibility.  (Dkt. No. 24, Attach. 7, at ¶¶ 25, 54.)  As a result, nothing in the Court's permitting of the filing of the Amended Complaint should be construed as

---

[8]     https://www.localsyr.com/news/local-news/syracuse-police-chief-talks-social-media-after-arrest-videos-go-viral/ (last visited Feb. 17, 2026).

resurrecting any claim that has been found to be insufficiently pleaded other than the claim for municipal liability against Defendant City of Syracuse.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the following claims are **DISMISSED**:

(a) all claims against Defendant Syracuse Police Department, Defendant Gerace and Defendant Cecile (such that they should be terminated from this action);

(b) all Section 1983 claims against Defendant Bougourd and Defendant Linnertz specifically in their official capacity;

(c) claims pursuant to the New York State Constitution against Defendant Linnertz and Defendant Bougourd;

(d) Plaintiff Christian Smith's claims for unlawful search and seizure/false arrest pursuant to Section 1983 and false imprisonment/false arrest pursuant to New York law;

(e) both Plaintiffs' claims for negligent hiring, training, retention, and supervision pursuant to New York law; and

(f) both Plaintiffs' claims for municipal liability against Defendant City of Syracuse pursuant to Section 1983; and it is further

**ORDERED** that the following claims are noted to **SURVIVE** this motion for judgment on the pleadings:

(a) Plaintiff Emree Smith's claim for unlawful search and seizure/false arrest against Defendant Bougourd in violation of 42 U.S.C. § 1983 and New York common law;[9]

(b) Plaintiff Emree Smith's claim for excessive force against Defendant Linnertz and Defendant Bougourd pursuant to 42 U.S.C. § 1983;

(c) Plaintiff Emree Smith's claim for assault and battery against Defendant Linnertz and Defendant Bougourd pursuant to New York common law;[10]

(d) Plaintiff Emree Smith's claim of respondeat superior against Defendant City of Syracuse, including to the extent such claim is brought pursuant to the New York State Constitution; and it is further

---

[9]     The Court declines Defendants' invitation to dismiss the state law false arrest claim as duplicative of the federal claim. Indeed, contrary to their assertion, the case upon which they rely for this argument, *Adams v. City of Syracuse*, 2022 WL 685286 (N.D.N.Y. Mar. 8, 2022) (Kahn, J.), does not support dismissal. *Adams*, 2022 WL 685286, at *5. Rather, in that case, the Court noted that, although generally a state law false arrest claim and a federal false arrest claim are substantially the same claim, dismissal of the state claim for redundancy rather than on the merits could permit a plaintiff to file wasteful and duplicative litigation in state court, and therefore the Court declined to dismiss the state law claim and instead considered it in parallel with the federal claim. *Id.* The Court will do likewise here.

[10]     The Court also declines Defendants' invitation to dismiss the state law assault and battery claim as duplicative of the federal excessive force claim because, as recognized by this Court previously, "generally, 'under New York state law, assault and battery claims are more plaintiff friendly . . . because under New York law if an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest.'" *Blot v. Town of Colonie*, 14-CV-0991, 2017 WL 61943, at *22 (N.D.N.Y. Jan. 5, 2017) (Suddaby, C.J.). Notably, in *Blot*, the Court dismissed the assault and battery claims because the arrest had been found lawful as a matter of law. Here, however, the Court has found that Plaintiffs have plausibly alleged that Plaintiff Emree Smith's arrest was not based on probable cause.

**ORDERED** that Plaintiffs shall, within **FOURTEEN (14) DAYS** of the entry of this Decision and Order, show cause as to why their negligence claims should not be dismissed for the reasons stated by the Court; and it is further

**ORDERED** that Plaintiffs' cross-motion to amend the Complaint (Dkt. No. 24) is **GRANTED** specifically as to it relates to the assertion of a municipal liability claim against Defendant City of Syracuse pursuant to 42 U.S.C. § 1983; and it is further

**ORDERED** that Plaintiff shall sign, file and serve his Amended Complaint consistent with this Decision and Order within **FOURTEEN (14) DAYS** of the entry of this Decision and Order in accordance with L.R. 15.1(c).

Dated: March 19, 2026
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

42